UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WALTER MILES,

                           Plaintiff,

      -against-

LEWIS TREE SERVICE, INC., WILDERNESS USA,
INC., and BILLY MCCOLLUM,

                           Defendants.
-----------------------------------------------------------------X

**Case No.:**

**COMPLAINT**

The Plaintiff, WALTER MILES (hereinafter "Plaintiff"), by and through his attorneys, CONSUMER ATTORNEYS PLLC, alleges and states as follows:

## **PRELIMINARY STATEMENT & NATURE OF THE ACTION**

1. Plaintiff brings this action against LEWIS TREE SERVICE, INC. (hereinafter, "Lewis Tree"), WILDERNESS USA, INC. (hereinafter "Wilderness USA"), Plaintiff's former employers, and BILLY MCCOLLUM (hereinafter "Billy"), individually (Lewis Tree, Wilderness USA, and Billy collectively hereinafter "Defendants").

2. Plaintiff was discriminated against because of his race, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, (hereinafter "Title VII"), and the Georgia Fair Employment Practices Act, O.C.G.A. §§ 45-19-29 *et seq.*, (hereinafter "FEPA").

3. Additionally, Plaintiff was subjected to egregious retaliation by Defendants, up to and including being wrongfully terminated, for complaining about racial discrimination he faced in the workplace from Defendant and agents of Defendant, which further violates Title VII and FEPA.

4. In this action, Plaintiff is seeking (i) compensatory damages; (ii) punitive damages; (iii) statutory attorneys' fees; (iv) back pay; (v) front pay; (vi) emotional distress damages; and

(vii) any other form of relief available by law or by equity, from Defendants for their discrimination and retaliation against the Plaintiff for exercising his statutory rights to engage in the protected activity of complaining about racial discrimination he faced in the workplace, and for otherwise discriminating and retaliating against Plaintiff on account of his race during his employment for availing himself of his rights.

## PARTIES

5. Plaintiff is a citizen of the State of Georgia, currently residing in Bartow County.

6. Plaintiff was an employee of Lewis Tree and Wilderness USA, as defined by Title VII and FEPA, as he was employed to work for the benefit of Defendant, collectively, at all relevant times, from 2014 to August 4, 2023 with a break between May 2021 until approximately March 2022.

7. Defendant LEWIS TREE SERVICE, INC., is a domestic New York corporation with its corporate headquarters in Monroe County.

8. Upon information and belief, Defendant Lewis Tree maintains offices and does business under the name of "Lewis Tree" in, among other places, Monroe County within the State of New York.

9. Accordingly, Defendant Lewis Tree is an employer as defined by Title VII and FEPA.

10. Defendant WILDERNESS USA, INC. is a domestic New York corporation with its corporate headquarters in Monroe County.

11. Upon information and belief, Defendant Wilderness USA maintains offices and does business under the name of "Wilderness USA" in, among other places, Monroe County within the State of New York.

12. Accordingly, Defendant Wilderness USA is an employer as defined by Title VII and FEPA.

13. At all relevant times, Lewis Tree has continuously been under contract with Wilderness USA for services rendered and has continuously been a joint employer with Wilderness USA where both generally controlled the terms and conditions of employment of Plaintiff.

14. Defendants Lewis Tree and Wilderness USA (collectively, the "Joint Employers") are persons against whom a right to relief is asserted jointly, severally, or out of the same transaction or series of transactions.

15. Additionally, questions of law or fact common to all Defendants will arise in this action.

16. Joint Employers are named as parties pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure in that the Joint Employers, at all relevant times, acted as joint employers with regard to Plaintiff.

17. At all times herein relevant, Billy McCollum was employed by Lewis Tree as a manager or supervisor.

18. At all times herein relevant, Billy McCollum held a supervisory or managerial role over the Plaintiff.

**JURISDICTION, VENUE, AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under federal law, including, *inter alia*, Title VII.

20. This Court has supplemental jurisdiction over Plaintiff's related claims arising under FEPA as they arise from the same common nucleus of operative facts.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of New York State in the Western District of New York.

22. In or around 2017, Plaintiff began being subjected to a variety of different types of racial discrimination in the workplace.

23. Despite Plaintiff's many complaints of racial discrimination and requests to be transferred away from the discriminatory Supervisor over the years, Plaintiff's complaints were ignored, and Plaintiff was forced to continue to work with Supervisor, creating a hostile work environment, until his termination in or around August 2023 in retaliation for his complaints.

24. Plaintiff's complaints of racial discrimination in the workplace constituted a protected activity.

25. Accordingly, Plaintiff has timely filed a charge of racial discrimination and retaliation with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC").

26. Plaintiff subsequently received a Notice of Right to Sue Letter on October 22, 2024.

27. Plaintiff has otherwise fully complied with all prerequisites to jurisdiction in this Court under Title VII, and timely files this suit.

## STATEMENT OF FACTS

28. Plaintiff began his employment for Lewis Tree in or around late May 2014 as a General Foreman of Defendant's utility vegetation management team known as Division 34.

29. Plaintiff has been working in the field of utility vegetation management since 2001 and is well versed in his field.

30. At the beginning of his employment with Lewis Tree, Plaintiff met with individuals known to him as Mark Mansopino (hereinafter "Mark"), who was a supervisor employed by Defendant; and Matt Meadows (hereinafter "Matt") who was a manager employed by Defendant.

31. Upon information and belief, Matt promised Plaintiff that if he remained in his employment position with Lewis Tree, he would have more opportunities for advancement made available to him, which is a testament to Plaintiff's qualifications for his position.

32. At the time Plaintiff began his employment with Lewis Tree, Plaintiff worked primarily from Montgomery, Alabama, but often had to travel to different States to fulfill his job duties.

33. In or around 2016, Plaintiff was moved to assist Lewis Tree's new location in Tuscaloosa, Alabama.

34. In or around 2017, Plaintiff first met Billy who was a supervisor employed by Lewis Tree.

35. Almost immediately after meeting Billy, Plaintiff began to grow concerned as he noticed a stark difference in how employees of different races were treated by Billy.

36. For example, as soon as Billy became Plaintiff's supervisor, Plaintiff informed Billy that his team's tree trimmer was severely damaged and was unsafe to operate.

37. Instead of looking into Plaintiff's reports, Billy ignored Plaintiff, resulting in the tree trimmer catching fire and endangering Lee Heard ("Lee") a member of Plaintiff's team.

38. Upon information and belief, Billy immediately blamed Plaintiff and his team on Division 34 for the incident after Plaintiff reported it to an individual known only to Plaintiff as Daniel, who was employed by Lewis Tree as a supervisor.

39. Shortly after the tree trimmer caught on fire, Plaintiff received an email from Defendant on or around August 16, 2017, informing him to prepare the equipment to be sent for salvage by Defendant's corporate fleet.

40. Plaintiff was confused as to why he was asked to perform this task as it was outside his usual job duties, but complied with the request made of him.

41. Upon seeing Plaintiff preparing the tree trimmer for transport, Billy immediately accused Plaintiff of trying to steal the equipment and reported Plaintiff to Daniel and Matt.

42. Plaintiff immediately displayed the email he had received from Defendant on or around August 16, 2017, as proof that he was not stealing the equipment.

43. The only reason Plaintiff was accused of stealing the equipment was due to his race and Billy's discriminatory animus toward Plaintiff.

44. In another instance, on or about July 20, 2017, Plaintiff was accused by Billy of speeding and driving recklessly while driving the company vehicle, which was untrue.

45. Upon information and belief, Plaintiff had to provide records of the local speed limits to prove he was not speeding in order to avoid being punished for Billy's accusations.

46. Plaintiff did provide the aforesaid records to clear him of any wrongdoing.

47. Upon information and belief, none of Plaintiff's non-Black co-workers were similarly accused of such behavior, nor was their driving monitored the same way Plaintiff's was.

48. Following these instances, Plaintiff requested a transfer to a different location so that he would no longer be required to work with Billy due to his constant harassment of Plaintiff.

49. Following these instances, Plaintiff was overlooked for promotions to the role of supervisor within Division 34, despite Plaintiff's exemplary work record.

50. Upon information and belief, Plaintiff was the only Black General Foreman employed within Division 34 at the time,

51. In or around February 2019, Plaintiff informed Daniel and Matt that he could no longer tolerate the treatment he was being subjected to and felt he had no choice but to end his employment with Defendant.

52. In or around May 2019, Plaintiff was offered a chance to transfer his employment to Wilderness USA, which Plaintiff accepted.

53. Upon information and belief, the Joint Employers share a corporate headquarters and Corporate Executive Officer.

54. While employed at Wilderness USA, Plaintiff continued to receive exemplary performance reviews as he did while employed at Lewis Tree.

55. In or around March 2020, Plaintiff was transferred back to continue employment with Lewis Tree in Nashville, Tennessee, under the distinct promise he would no longer be under the supervision of Billy.

56. After returning to work with Lewis Tree from Wilderness USA, Plaintiff lodged an official complaint to Lewis Tree's corporate management in or around June 2020, explaining the racial discrimination he faced under Billy.

57. Plaintiff further explained that all Black employees were similarly treated in a negative way under Billy's supervision.

58. In addition, Plaintiff remained in his employment with Lewis Tree, but noticed that he continued to be passed over for opportunities for advancement despite his many years of service to Defendants Lewis Tree and Wilderness USA.

59. In or around May 2021, Plaintiff reached out to Matt and Daniel and expressed his frustration that both he and all other African-American crew members of Division 34 had not been offered opportunities for advancement since he first began his employment in or around 2014.

60. The sole reason Plaintiff and his Black colleagues had not been given any opportunities for advancement was on the basis of their race.

61. Therefore, on or around May 2021, Plaintiff ended his employment with Lewis Tree.

62. Plaintiff's separation from employment constituted a constructive discharge because Plaintiff could no longer tolerate Billy's harassment of him in light of many complaints of discrimination to the Joint Employers which went ignored.

63. This did not mark the end of Plaintiff's employment however, as on or around March 23, 2022, Plaintiff was offered and accepted an employment offer from Lewis Tree to work as a Crew Leader in the State of Georgia.

64. Upon information and belief, upon Plaintiff's return to work as a Crew Leader, Plaintiff continued to perform in an exemplary manner while receiving positive client reviews.

65. In or around February 2023, Plaintiff was asked by Daniel to travel to Mississippi to assist Billy with a project on behalf of Lewis Tree.

66. While Plaintiff objected to doing so, he nonetheless took his duties seriously despite his objections.

67. In or around April 2023, Plaintiff arrived in Mississippi to find the state of the equipment being used in utter disrepair and unsafe to use.

68. Upon information and belief, Plaintiff was informed by a member of Billy's crew, an individual known only to Plaintiff as Dustin, that prior to Plaintiff's arrival in Mississippi, all

8

the equipment that had been working was swapped out for the broken and unsafe equipment Plaintiff found upon arrival.

69. The only reason Billy did this was due to his discriminatory animus toward Plaintiff on account of his race.

70. The rest of Plaintiff's time in Mississippi was filled with numerous instances of discriminatory and hostile treatment from Billy, and the General Foreman employed with Billy, Michael Allison (hereinafter "Michael").

71. For example, on or about June 2023, Michael attempted to start a physical altercation with Plaintiff, resulting in a meeting with Plaintiff, Billy, Michael, and Daniel, which occurred on or around June 29, 2023.

72. During the June 29, 2023, meeting, Plaintiff was blamed for starting the physical altercation.

73. When Plaintiff tried to explain that he had not started any confrontation with Michael, he was ignored.

74. Upon information and belief, during the same meeting, Billy told Plaintiff that Plaintiff should not be a General Foreman because of his race.

75. Specifically, Billy said words to the effect of "Walter, you a Black man and it does not look right for you to be in such a position. People like you should not be in a position like that."

76. Later, on or about July 12, 2023, Plaintiff was approached by Billy and told that other employees of Lewis Tree had filed claims with the EEOC before due to his actions and tried to intimidate Plaintiff by claiming that all those prior charges had failed before.

77. On or about July 25, 2023, Plaintiff notified Billy that he would be absent from work on or around August 2, 2023, in order to enroll his children in school for the beginning school year.

78. In or around July 26, 2023, Plaintiff was approached by Billy and subjected to a incessant profane language and yelling in a racial tirade against Plaintiff.

79. On the same day, Plaintiff again reached out to Daniel and requested yet another transfer to not work with Billy.

80. Upon information and belief, Daniel once again denied Plaintiff's request and threatened Plaintiff to not complain to him about Billy's discriminatory treatment anymore.

81. In or around early August 2023, Plaintiff was informed that Billy had made statements that people of Plaintiff's race should not be in positions of authority.

82. These are just some examples of the repeated instances of racial discrimination Plaintiff faced while employed by Joint Employers.

83. Upon information and belief, Plaintiff engaged in the protected action of reporting these instances, and was either ignored or told to no longer report them.

84. All this culminated in or around August 4, 2023, when Plaintiff received a phone call from Billy informing him that his services were no longer required and that his employment with Lewis Tree was being terminated.

85. In other words, within days of Plaintiff's most recent complaint of discrimination, he was immediately retaliated against by Billy, the individual who had incessantly harassed and discriminated against him for years, which Plaintiff was regrettably forced to endure for so long.

86. For nearly ten (10) years, Plaintiff dedicated himself tirelessly to the performance while employed for the benefit of Joint Employers.

87. Throughout his tenure with Joint Employers, Plaintiff received exemplary performance reviews and maintained a virtually unblemished record of employment, rendering him qualified for his position.

88. Unfortunately, however, Plaintiff was subjected to repeated instances of racial discrimination in violation of Title VII and FEPA.

89. Further, when Plaintiff would engage in the protected action of reporting these instances, he was either ignored or told to stop reporting them.

90. In the end, Plaintiff was terminated in retaliation for his complaints, in violation of Title VII and FEPA.

91. Instead of reviewing Plaintiff's requests to not work with Billy so as to not be subjected to further workplace discrimination, or at least investigating these complaints, Lewis Tree chose to keep Plaintiff working with Billy, perpetuating a hostile work environment.

92. As a result of Defendants' blatant and willful violations of multiple state and federal employment laws, Defendants' actions have detrimentally affected Plaintiff's emotional state of mind and caused him financial harm as well.

93. Despite his long tenure with Joint Employers and his good faith efforts to perform the duties of his employment with the utmost diligence, Plaintiff was unlawfully denied the dignity and respect he deserved as a human being and for his years of loyal service.

94. Instead, Defendants repeatedly subjected Plaintiff to adverse employment actions because of his race, including discrimination, unlawful retaliation, and finally, wrongful termination, in violation of Title VII and FEPA.

95. As a result of the foregoing, Defendants' deliberate, willful, and unlawful employment practices to our client have caused him to suffer: (a) loss of salary, wages, and benefits; (b) severe emotional distress, pain and suffering; (c) other statutory damages and

attorneys' fees; and (d) Plaintiff seeks any other form of relief available to him under the law or in equity.

96. Accordingly, Plaintiff is entitled to recover the maximum amount of damages recoverable in this jurisdiction, as well as any such additional or alternative relief as the Court deems just and proper.

## COUNT ONE

### Discrimination in Violation of Title VII

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

98. The claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendants.

99. Plaintiff complains that Defendants violated Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race (Black).

100. 42 U.S.C. §§ 2000e-2 states:

> "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to him compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

101. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e by discriminating against Plaintiff because of his race (Black).

102. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

103. Defendants intentionally violated Plaintiff's rights under the Title VII with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT TWO

### Retaliation in Violation of Title VII

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

105. 42 U.S.C. §§ 2000e-3 states:

> "It shall be an unlawful employment practice for an employer to discriminate against any of him employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the subchapter."

106. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-3 by retaliating against Plaintiff for complaining of the aforementioned violations.

107. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

108. Defendants intentionally violated Plaintiff's rights under the Title VII with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE
### Discrimination in Violation of FEPA

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

110. The claim is authorized and instituted pursuant to the provisions of FEPA for relief based upon the unlawful employment practices of Defendants.

111. Plaintiff complains that Defendants violated FEPA's prohibition against discrimination in employment based, in whole or in part, upon an employee's race (Black).

112. O.C.G.A. § 45-19-29 states:

> "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, or disability, unless based upon a bona fide occupational qualification."

113. Defendants engaged in unlawful employment practices prohibited by O.C.G.A. § 45-19-29 by discriminating against Plaintiff because of his race (Black).

114. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

115. Defendants intentionally violated Plaintiff's rights under FEPA with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT FOUR

### Retaliation in Violation of FEPA

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

117. O.C.G.A. § 45-19-30 states:

> "It shall be an unlawful employment practice for an employer to discriminate against any individual because such individual has opposed any practice made an unlawful employment practice by this chapter, or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

118. Defendants engaged in unlawful employment practices prohibited by O.C.G.A. § 45-19-30 by retaliating against Plaintiff for complaining of the aforementioned violations.

119. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

120. Defendants intentionally violated Plaintiff's rights under FEPA with malice or reckless indifference, and, as a result, are liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment from the Defendants as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages, and benefits, plus statutory prejudgment and post-judgment interest;

C. Award of front pay to Plaintiff (including benefits);

D. Award of backpay to Plaintiff;

E. Award of all costs and reasonable attorneys' fees to Plaintiff for all costs incurred in connection with this action;

F. Award of compensatory damages to Plaintiff;

G. Award of emotional distress damages to Plaintiff;

H. Award of punitive damages to Plaintiff for Defendant's willful, reckless, intentional, knowing, and/or malicious misconduct; and

I. A grant of any such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all claims properly triable by a jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: Flushing, New York
January 20, 2025

                Respectfully submitted,

*/s/ Uri Horowitz*
Uri Horowitz, Esq.
14441 70th Road
Flushing, NY 11367
Tel: +1 718-705-8706
Fax: +1 718-705-8705
Email: Uri@Horowitzlawpllc.com

**CONSUMER ATTORNEYS PLLC**

/s/*Emanuel Kataev*
Emanuel Kataev, Esq.
68-29 Main Street
Flushing, NY 11367
T: (718) 412-2421 (office)
F: (718) 489-4155 (facsimile)
E: ekataev@consumerattorneys.com (email)

*Pending admission and/or admission pro hac vice*

*Attorneys for Plaintiff*
*Walter Miles*